NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**STEPHEN MARIN,**
*Petitioner*

**v.**

**DEPARTMENT OF HOMELAND SECURITY,**
*Respondent*

_____

2024-1767

_____

Petition for review of the Merit Systems Protection Board in No. SF-0752-21-0089-I-1.

_____

Decided:  February 7, 2025

_____

STEPHEN MARIN, Winchester, CA, pro se.

LAURA OFFENBACHER ARADI, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent.  Also represented by BRIAN M. BOYNTON, WILLIAM J. GRIMALDI, PATRICIA M. MCCARTHY.

_____

Before DYK and PROST, *Circuit Judges*, and GOLDBERG, *Chief District Judge*.[1]

PER CURIAM.

Stephen Marin petitions for review of a final decision of the Merit Systems Protection Board ("MSPB") upholding his removal from the Department of Homeland Security Bureau of Immigration and Customs Enforcement ("the agency"). *Marin v. Dep't of Homeland Sec.*, No. SF-0752-21-0089-I-1 (M.S.P.B. Feb. 29, 2024) ("*Final Decision*"), S.A. 36–43.[2]  For the following reasons, we affirm.

## BACKGROUND

Mr. Marin began federal service in 1991 and served as a Criminal Investigator since 2002.  At the time of his removal, Mr. Marin worked as a GS-1811-13 Criminal Investigator with the agency, which is a law enforcement officer position.  S.A. 52.  GS-1811-13 Criminal Investigators are expected to perform "[i]nvestigative [c]ase [w]ork," "[p]repare[] affidavits for court-approved search and seizure warrants and electronic intercepts," "assist[] the U.S. Attorney, and testif[y] as a witness in judicial hearings or administrative/courtroom trial proceedings."  S.A. 67–68.  This position also requires the Criminal Investigator to have the "[a]bility to testify as a witness in a professional, credible, articulate and consistent manner."  S.A. 70.

On July 10, 2020, the Assistant U.S. Attorney, Chief of the Criminal Division, sent the Deputy Special Agent in Charge at Homeland Security Investigations, a letter stating:

---

[1]    Honorable Mitchell S. Goldberg, Chief Judge, United States District Court for the Eastern District of Pennsylvania, sitting by designation.

[2]    "S.A." refers to the supplemental appendix included with the government's informal brief.

> [Mr.] Marin has engaged in conduct over the years that makes it extremely difficult for [the agency] to rely on him as a witness in any of our cases. His conduct has led to him being prosecuted and disciplined, including for matters that directly relate to his credibility.

S.A. 64 ("the July 10, 2020 *Giglio* letter").[3]

The U.S. Attorney also recounted Mr. Marin's disciplinary history and noted that from 2002 to 2004, Mr. Marin misused government-owned vehicles, displayed his government-issued firearm for unofficial purposes, and exhibited a lack of candor based on his submitted affidavit related to these incidents. In 2014, Mr. Marin pleaded guilty to unlawfully entering land—a misdemeanor criminal offense. In 2019, Mr. Marin "certified his timecard as if he worked the entire day even though he failed to attend a mandatory training that day," and "it appear[ed] that [Mr.] Marin falsely claimed to his supervisor that he did not attend the training because he needed to take care of his ill mother." S.A. 65. The U.S. Attorney concluded that "[b]ecause many of these issues impair [Mr.] Marin's credibility, [the agency] cannot accept any case in which [Mr.] Marin is likely to be called as a witness by the prosecution or defense." S.A. 65.

On August 25, 2020, the agency sent Mr. Marin a letter proposing to remove him on a single charge: "INABILITY TO PERFORM FULL RANGE OF DUTIES." S.A. 59 (emphasis omitted). The letter also cited to the July 10, 2020 *Giglio* letter. On October 23, 2020, the agency's deciding

---

[3]    In *Giglio*, the Supreme Court required prosecutors to disclose when a testifying officer may lack credibility. *See Giglio v. United States*, 405 U.S. 150 (1972). The U.S. Attorney's Office ("USAO") is responsible for ensuring compliance with *Giglio*. *Id.* at 154.

official for Mr. Marin's case informed Mr. Marin via letter that he would be removed from his position effective that same day. S.A. 47–55. In this letter, the deciding official explained that he considered the factors listed in *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 306–07 (1981) ("the *Douglas* factors") to assess whether the penalty of removal was appropriate and walked through each of the twelve *Douglas* factors as they applied to Mr. Marin. S.A. 47–55.

Mr. Marin appealed the removal decision, and the administrative judge ("AJ") issued an initial decision affirming the agency's decision to remove Mr. Marin from his position. *Marin v. Dep't of Homeland Sec.*, No. SF-0752-21-0089-I-1 (M.S.P.B. Aug. 18, 2021) ("*Initial Decision*"), S.A. 5–35. Mr. Marin petitioned the MSPB for review. The MSPB denied the petition and adopted the AJ's initial decision as the MSPB's final decision. *See Final Decision*, at S.A. 37.

Mr. Marin timely petitions for review. We have jurisdiction under 28 U.S.C. § 1295(a)(9).

## DISCUSSION

Our review of MSPB decisions is limited under 5 U.S.C. § 7703(c). We may set aside the MSPB's decision only if it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c). "The petitioner bears the burden of establishing reversible error in the [MSPB's] final decision." *Sistek v. Dep't of Veterans Affs.*, 955 F.3d 948, 953 (Fed. Cir. 2020).

An agency seeking to withstand a challenge to an adverse action taken against an employee must (1) establish by a preponderance of the evidence that the charged conduct occurred; (2) show a nexus between that conduct and

the efficiency of the service; and (3) demonstrate that the penalty imposed was reasonable. *See Pope v. USPS*, 114 F.3d 1144, 1147 (Fed. Cir. 1997).

Mr. Marin raises two main arguments challenging the MSPB's final decision. First, he argues that the agency failed to establish a nexus between his inability to testify and the efficiency of the service. Second, he argues that by allowing him to continue to work for eighteen years despite his disciplinary history, the agency had condoned that practice, thus warranting mitigation of the removal penalty. We address each argument in turn.

I

We first address Mr. Marin's argument that the agency did not meet its burden of establishing a nexus between his sustained misconduct and the efficiency of the service. We disagree.

Here, substantial evidence supports the MSPB's nexus finding. The MSPB determined that "[b]ecause the sustained charge here encompassed [Mr. Marin's] manifest failure to meet the testimonial responsibilities of his job via *Giglio* impairment—meaning he no longer met a clear condition/qualification of his GS-1811-13 Criminal Investigator position," "the agency met its burden of establishing by preponderant evidence a nexus between the sustained misconduct and the efficiency of the service." *Initial Decision*, at S.A. 18–19.

While Mr. Marin cites to *Morrison v. National Science Foundation*, 423 F.3d 1366 (Fed. Cir. 2005), to support his argument, *see* Appellant's Informal Br. 13–15, that case is distinguishable from the case at hand. In *Morrison*, the employee's "status as a productive employee who complied with his supervisors' instructions did not suddenly change" upon his conviction. *Morrison*, 423 F.3d at 1369. Here, however, once the July 10, 2020 *Giglio* letter issued, Mr.

Marin was unable to meet his testimonial responsibilities, so he could not meet his full range of job responsibilities.

We thus conclude that the MSPB's nexus finding is supported by substantial evidence.

## II

Turning to Mr. Marin's condonation argument, we conclude that the MSPB's rejection of this argument was not arbitrary, capricious, or otherwise erroneous.

The MSPB first evaluated the agency's deciding official letter, along with the attached *Douglas*-factors form, and determined that "the agency considered pertinent penalty factors, balanced them within acceptable parameters, and thus [the agency's] penalty determination deserves deference." *Initial Decision*, at S.A. 22. The MSPB then determined that the agency did not condone Mr. Marin's impairment. *Initial Decision*, at S.A. 23. Rather, the agency "worked diligently to accommodate [Mr. Marin] in various ways, and did its best to utilize him in his assigned position until the USAO finally determined he was *Giglio*-impaired, which determination itself constituted a sea change as to his capacity to fulfill his job duties." *Initial Decision*, at S.A. 23. The MSPB also stated that "the agency was bound by the USAO's determination (and in truth, lacking authority could not have condoned anything in terms of *Giglio* impairment)." *Initial Decision*, at S.A. 23.

On this record, the MSPB's conclusion that "the agency met its burden of proof as to the propriety of its chosen penalty of removal," *Initial Decision*, at S.A. 26, was not arbitrary, capricious, or otherwise erroneous.

## CONCLUSION

We have considered Mr. Marin's remaining arguments and find them unpersuasive. For the foregoing reasons, we affirm the MSPB's final decision.

## AFFIRMED

### COSTS

No costs.